# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

———————

Nos. 06-3659/3664/3667

———————

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | *   Appeals from the United States |
| v. | *   District Court for the |
| | *   District of Nebraska. |
| James McCracken, | * |
| | * |
| Appellant. | * |

———————

Submitted: March 13, 2007
Filed: June 7, 2007

———————

Before COLLOTON, BEAM, and GRUENDER, Circuit Judges.

———————

COLLOTON, Circuit Judge.

James McCracken was convicted of bank robbery while on supervised release for a prior offense. The district court[1] also found that McCracken committed two violations of his supervised release. The court imposed a term of 151 months' imprisonment for the bank robbery, and a term of 20 months' imprisonment for each of the supervised release violations, with all three sentences to be served

---

[1]The Honorable Warren K. Urbom, United States District Judge for the District of Nebraska.

consecutively. The court also ordered restitution for the bank robbery. McCracken appeals the judgment, and we affirm.

On March 17, 2006, one day after his release from prison for bank robbery, and while serving a term of supervised release, McCracken robbed a bank in Omaha, Nebraska, and escaped with about $3700. He wore a white vest under a windbreaker, with wires protruding from the vest, and carried a silver trigger device in his hand with wires leading to a suspected bomb. (PSR ¶ 17). He admitted robbing the same bank again on April 20, 2006, at which time he presented a note that threatened to explode a bomb if the bank employees did not cooperate. (PSR ¶ 18). McCracken is also accused of robbing another bank in Knoxville, Tennessee, on April 3, 2006. The March bank robbery constituted a violation of McCracken's conditions of supervised release, and he also violated those conditions by absconding from the halfway house to which he was assigned. McCracken pled guilty to the March robbery in Omaha, and admitted the two separate violations of his supervised release.

At sentencing, the district court found that McCracken was a career offender under the advisory sentencing guidelines. *See* USSG § 4B1.1. The career offender-guideline provides for enhanced punishment where a defendant convicted of a crime of violence, which includes McCracken's bank robbery offense, previously sustained two prior convictions for either a crime of violence or a controlled substance trafficking offense. *Id.* The district court cited two convictions for bank robbery in 1988 as the basis for finding that McCracken was a career offender. McCracken argues that the two robberies should be counted as only one prior conviction for purposes of the career-offender guideline, and that he does not qualify as a career offender.

The applicable guideline provision, USSG § 4B1.2(c), states that in order to count as "two prior felony convictions," the sentences for the two felonies must be counted separately under USSG § 4A1.1(a), (b), or (c). Prior sentences in "unrelated

cases" are to be counted separately. USSG § 4A1.2. The commentary elaborates that where offenses were not separated by an intervening arrest, they are "considered related if they resulted from offenses that (A) occurred on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing. USSG § 4A1.2, comment. (n.3).

McCracken was convicted of the two robberies in the District of Nebraska in 1988. One robbery was committed in Oregon, and the prosecution was transferred to Nebraska pursuant to Federal Rule of Criminal Procedure 20. The second robbery was committed in Nebraska and prosecuted in the District of Nebraska. The cases were docketed with separate case numbers in the district court. They were assigned to the same district judge, and McCracken was sentenced in both cases on the same day by the same judge.

The district court determined that the two sentences were not "related." The court observed that there was no formal order consolidating the cases for sentencing or trial. The court also found that they were not part of a single common scheme or plan, because "one did not have any particular relationship to the other." (S. Tr. at 19). We consider this determination a finding of fact subject to review under the clearly erroneous standard. *United States v. Mills*, 375 F.3d 689, 691 (8th Cir. 2004).

McCracken argues that the sentences for his two robbery convictions from 1988 are "related," either because the offenses were part of a common scheme or plan or because they were consolidated for sentencing. As to the latter, we have held that formal consolidation is necessary to satisfy the requirement that two prior cases were "consolidated for trial or sentencing." *United States v. Davidson*, 437 F.3d 737, 740 (8th Cir. 2006). McCracken's prior robbery cases were not formally consolidated, so the district court correctly found that McCracken failed to meet this prong of the "related" case analysis.

Whether the two prior bank robberies were part of a "single common scheme or plan" is a fact-intensive inquiry in which a variety of considerations may be relevant. *See Mills*, 375 F.3d at 692 n.5. The purpose of the "common scheme or plan" test is to "identify the less dangerous criminal." *Davidson*, 437 F.3d at 740 (quoting *United States v. Ali*, 951 F.2d 827, 828 (7th Cir. 1992)). The Sentencing Commission, on that view, apparently believed that if two prior offenses were committed as part of a common scheme or plan, then the offender's criminal history should be considered less serious than if the offender committed two unrelated prior offenses. A "common scheme or plan" implies that the crimes were jointly planned, or at least that the offender intended that the second would be committed as a consequence of the first. *Davidson*, 437 F.3d at 740. "[A] single common scheme or plan involves something more than simply a repeated pattern of conduct." *Id.* (quoting *United States v. Maza*, 93 F.3d 1390, 1400 (8th Cir. 1996)).

In this case, the two 1988 bank robberies were committed within days of each other. On March 28, 1988, McCracken robbed a bank in Portland, Oregon, and then on April 6, 1988, he robbed a bank in Omaha, Nebraska. (PSR ¶¶ 9, 10). It was not clearly erroneous for the district court to find that these robberies were "simply a repeated pattern of conduct," *Davidson*, 437 F.3d at 740, rather than a common scheme. The robberies occurred over a week apart, and they were separated by hundreds of miles in non-contiguous states. There is no evidence that they were jointly planned or that the second was committed as a consequence of the first. While there were similarities in the nature and mode of committing the offenses, there was no logical progression suggesting a grand plan, and no apparent interrelationship between the two robberies. We conclude that the district court did not clearly err in calculating the advisory guideline range.

The district court sentenced McCracken to a term of 151 months' imprisonment, and McCracken challenges the reasonableness of this sentence with regard to 18 U.S.C. § 3553(a). He contends that the district court was required to

impose a more favorable sentence due to mitigating factors in this case, including the harmlessness of the purported bomb he used in the robberies and his history of physical and mental illness.

We conclude that the sentence imposed, which was within the advisory guideline range, was reasonable. The Sentencing Commission recommends no distinction among armed robbers based on whether an apparently dangerous weapon was actually capable of inflicting death or serious injury during the robbery. *See* USSG § 2B3.1, comment. (n.2). The district court reasonably could conclude, consistent with the guidelines, that whether or not McCracken's bomb was real, his use of the device likely caused emotional and psychological harm to those present during the robbery, and increased the potential for physical injury during the response to the perceived threat posed by the bomb. *See United States v. Vincent*, 121 F.3d 1451, 1455 (11th Cir. 1997); *United States v. Dixon*, 982 F.2d 116, 124 (3d Cir. 1992). The Sentencing Commission also recommends that physical and mental health ordinarily are not reasons to impose different sentences in the cases of similarly-situated bank robbers. USSG §§ 5H1.3, 5H1.4. Here, while McCracken's record does include evidence of physical ailments and previous mental health concerns, (PSR ¶¶ 63-66), the record does not include a clear showing of extraordinary physical or mental impairments that would make his incarceration particularly dangerous or harsh. *Cf. United States v. Denton*, 434 F.3d 1104, 1115-16 (8th Cir. 2006). While the sentencing guidelines are advisory, the district court still must consider them, 18 U.S.C. § 3553(a)(4), and it was not unreasonable for the district court to conclude in light of other statutory factors – the need to deter violent crime, to protect the public from McCracken, and to avoid unwarranted sentence disparities, 18 U.S.C. § 3553(a)(2), (6) – that a sentence within the advisory guideline range was appropriate.

Finally, McCracken argues that the district court's order that he make restitution to U.S. Bank in the amount of $4571 erroneously included $850 that law enforcement

agents seized from him at the time of his arrest. The district court's order was correct, because the Mandatory Victims Restitution Act requires the court to order "restitution to each victim in the *full amount* of each victim's losses," 18 U.S.C. § 3664(f)(1)(A) (emphasis added), and the district court has no discretion to adjust the total restitution due to the victim based on funds held by law enforcement. *See United States v. Bright*, 353 F.3d 1114, 1123 (9th Cir. 2004); *United States v. Alalade*, 204 F.3d 536, 540 (4th Cir. 2000). In this case, the court appropriately calculated the total amount of restitution based on the loss to the victim, and then stated that "[a]ny amount that is in the custody of government officials now will be credited to that [total] when it is paid into court." (S. Tr. at 46). The United States Attorney characterizes this as an "additional order" that "any amount in the government's custody would be credited to the restitution ordered." (Br. of Appellee at 25). This is not precisely what the district court said, but whether or not the court would have authority to enter such an order, *cf. Bright*, 353 F.3d at 1123-24, the United States Attorney's representation in this case leads us to expect that the government will ensure that the $850 seized from McCracken is deposited with the district court for delivery to the victim, at which time the court presumably will adjust the amount of restitution due by McCracken.

The judgment of the district court is affirmed.

_____