# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-2893

_____

United States of America

*Plaintiff - Appellee*

v.

Scott R. Fonseca

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Springfield

_____

Submitted: May 14, 2015
Filed: June 24, 2015

_____

Before LOKEN, BOWMAN, and KELLY, Circuit Judges.

_____

LOKEN, Circuit Judge.

Scott Fonseca pleaded guilty to stealing thirty six firearms from a federally licensed firearms dealer in violation of 18 U.S.C. §§ 922(u) and 924(i)(1). Prior to this conviction, Fonseca was convicted in the District of Kansas of knowing possession and disposal of eight of those firearms; he was serving that 70-month sentence at the time he was sentenced for this offense. The presentence investigation report determined an advisory guidelines range of 63-78 months in prison and

recommended that the district court reduce the sentence for time served on the undischarged Kansas sentence if the Bureau of Prisons would not do so. See U.S.S.G. § 5G1.3(b)(1). Consistent with the plea agreement, the government urged a guidelines range sentence of 70 months, reduced by the Kansas time served (50 months). Fonseca urged a greater sentence credit resulting in a sentence of 13 months, to be served concurrent with the undischarged remainder of his Kansas sentence. Emphasizing Fonseca's lengthy criminal history and other § 3553(a) sentencing factors, the district court varied upward from the advisory range to 88 months, applied a 50-month credit for Kansas time served, and sentenced Fonseca to 38 months in prison, concurrent with the remainder of the Kansas sentence, plus a criminal restitution penalty of $18,666.62. Fonseca appeals the sentence. We affirm in part and remand to the district court for further restitution proceedings.

1. On appeal, Fonseca's counsel moved to withdraw and filed a brief under Anders v. California, 386 U.S. 738 (1967), arguing that the district court abused its discretion in varying upward and in not granting an additional sentence credit for 5.4 months of good time credit the Bureau of Prisons gave him while serving the Kansas sentence. Fonseca filed a pro se supplemental brief, arguing that the district court's sentence, viewed in relation to the Kansas sentence, was vindictive or a violation of the Double Jeopardy Clause; and that counsel's unavailability between the plea and sentencing hearings violated Fonseca's right to due process.

We conclude these contentions are without merit. In the written plea agreement, Fonseca waived his right to appeal his sentence. As is common, an enumerated exception allowed him to appeal an "illegal sentence," including a sentence that exceeds the statutory maximum, but the exception "does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence." The sentencing issues raised in counsel's Anders brief, and Fonseca's pro se argument that the district court should not have sentenced him more harshly than the District of Kansas judge,

fall within the scope of this appeal waiver. We will enforce the waiver because the plea-hearing record convinces us that Fonseca entered into the plea agreement and the appeal waiver knowingly and voluntarily, and that no miscarriage of justice would result from enforcing it. See United States v. Scott, 627 F.3d 702, 704 (8th Cir. 2010) (de novo review).

Fonseca's pro se double jeopardy argument, even if outside the appeal waiver, is without merit because the District of Kansas conviction and this conviction were not for the same offense. See Monge v. California, 524 U.S. 721, 727-28 (1998). To the extent Fonseca's pro se complaint about trial counsel's unavailability can be construed as a claim of ineffective assistance of counsel, it falls outside the appeal waiver, but we decline to review that claim on direct appeal. See United States v. Looking Cloud, 419 F.3d 781, 788-89 (8th Cir. 2005).

2. The district court imposed a criminal restitution penalty of $18,666.62 to be paid to two victims: $2500 to 417 Guns, the licensed dealer from which the firearms were stolen, and $16,166.62 to Gibson and Associates, the amount it paid to 417 Guns for its insured loss from the theft (an amount that included both the value of the stolen firearms and damage to the building caused by the break-in). At sentencing, the government advised that eighteen firearms had been recovered, but the district court did not reduce the amount of restitution by the value of the recovered firearms. Following our review of the record under Penson v. Ohio, 488 U.S. 75, 80 (1988), we directed the government to file a brief "(i) clarifying the status under the district court's restitution order of 'the weapons that are actually in police custody' referred to on page 4 of the Sentencing Hearing transcript, and (ii) addressing the question whether the district court committed plain error in ordering restitution in an amount greater than the victims' actual losses at the date of sentencing."

The government's responsive brief reported that eight of the recovered firearms were turned over to insurer Gibson and Associates, which then sold the firearms to

417 Guns for $2,025. An additional ten firearms were recovered and are currently in police custody. The remaining eighteen stolen firearms have not been recovered. The government concedes the district court committed plain error by not reducing the restitution owed to insurer Gibson and Associates by $2,025, the amount it received when it sold the eight recovered firearms to 417 Guns. We agree there was plain error, but we reject the government's contention that this modification is sufficient.

First, because restitution under the Mandatory Victims Restitution Act (MVRA) is a compensatory remedy, the restitution awarded to a MVRA victim "must be based on the amount of loss *actually caused* by the defendant's offense." United States v. Chalupnik, 514 F.3d 748, 754 (8th Cir. 2008) (quotation omitted). The government has the burden to prove that the restitution awarded does not exceed the actual, provable loss caused by the offense. See United States v. Frazier, 651 F.3d 899, 910-11 (8th Cir. 2011). When a victim's tangible property is lost or destroyed, such as stolen firearms, actual loss equals "the greater of . . . the value of the property on the date of the damage, loss, or destruction; or . . . the value of the property on the date of sentencing." 18 U.S.C. § 3663A(b)(1)(B)(i). Absent proof that a firearm was unique, the actual loss resulting from a theft of a firearm dealer's inventory includes the fair market value of the stolen firearms. Frazier, 651 F.3d at 910.

Here, the MVRA victim was 417 Guns, not its insurer, Gibson and Associates. Frazier, 651 F.3d at 907. The restitution awarded for the actual loss of 417 Guns may not be reduced because all or part of the loss was compensated by insurance. 18 U.S.C. § 3664(f)(1)(B). Rather, the district court properly ordered that restitution be paid to Gibson and Associates for that portion of the victim's loss it had compensated. See § 3664(j)(1). It may be reasonable to assume for restitution purposes that a property insurer's payment of the victim's claim fairly reflected the fair market value of the lost property, but that assumption can be challenged by the victim or by the restitution defendant, as in Frazier, 651 F.3d at 907-10.

The situation is complicated in this case because part of the stolen property was recovered before an order of restitution was entered. The statute unambiguously provides that a restitution award must be reduced by "the value (as of the date the property is returned) of any part of the property that is returned." 18 U.S.C. § 3663A(b)(1)(B)(ii); see Robers v. United States, 134 S. Ct. 1854, 1858 (2014) (the statute "directs the court to value the returned jewelry as of the date it was returned and subtract that amount from the value of all the jewelry the swindler obtained"). The reduction must be based on the fair market value of the recovered property *to the victim, 417 Guns*, not the value to its insurer, Gibson and Associates. Return of the eight recovered firearms to the insurer may have been logical or convenient, but the restitution award must be reduced by the value of the eight firearms to 417 Guns on the date they were returned, not by the amount 417 Guns paid its insurer in what may have been a sale at salvage or liquidation prices. Thus, on remand, the government must prove the proper amount of the reduction for these eight firearms.

Second, the ten firearms that the government advises have been recovered but remain in police custody require further inquiry by the district court before a final order of restitution is entered. When a criminal proceeding is completed, the government has a duty to return property in its custody to the rightful owner, unless it is subject to forfeiture. See United States v. Gregoire, 638 F.3d 962, 974 (8th Cir. 2011). In some cases, the sentencing court may enter a restitution order providing that the order will be credited by the value of property in the custody of government officials when it is returned to the MVRA victim. See United States v. McCracken, 487 F.3d 1125, 1129 (8th Cir. 2007). But McCracken involved cash seized from the defendant. Cash is a fungible commodity whose value rarely changes over time. Determining the fair market value of firearms "as of the date the property is returned" is more complex, and the statute gives the sentencing court "adequate authority" to provide credits against an offender's restitution obligation, to prevent either a windfall to the government if it chooses not to return the property, or a double recovery to the MVRA victim. Robers, 134 S. Ct. at 1858. Therefore, on remand, the

district court is directed to obtain from the government an accounting of the recovered firearms in official custody, including when they will be returned to 417 Guns or an explanation why they will not be returned, and proof of the fair market value of those firearms on the date they were recovered. Those facts should enable the district court to determine whether the restitution award should be further reduced or credited for all stolen firearms that have been recovered but remain in official custody. See 18 U.S.C. § 3664(d)(5)

For the foregoing reasons, we deny defense counsel's motion to withdraw, vacate the restitution order, and remand to the district court for further proceedings to determine the amount of restitution that should be awarded. In all other respects, the judgment of the district court is affirmed.

_____