In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-3134

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DEANDRE ANDERSON,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 14-CR-186 — **Lynn Adelman**, *Judge.*

ARGUED JUNE 7, 2017 — DECIDED AUGUST 7, 2017

Before RIPPLE, ROVNER, and HAMILTON, *Circuit Judges.*

ROVNER, *Circuit Judge.* Deandre Anderson, who pleaded guilty to armed bank robbery, challenges an order of restitution. He contends that the district court compelled him to pay an extra $2,107—the value of stolen currency recovered by police minutes after the robbery and held by the government ever since. We agree with Anderson that the restitution award is overstated, and we remand for a determination of the correct amount.

**I.**

This case is before us after a remand for resentencing. *See United States v. Anderson*, No. 15-2710 (7th Cir. Feb. 4, 2016). Anderson and three accomplices had robbed a Milwaukee bank in 2014. He went inside with two others (one of them his brother), while a fourth man waited outside in a stolen car. The men grabbed bills and coins, and as they drove away, a dye pack burst inside a bag of currency— leaving some of the bills stained and singed. The robbers tossed the bag from the car, but a citizen found it and gave it to police. Authorities found more of the stolen currency when, a day later, they arrested Anderson's brother driving the stolen getaway car.

Anderson pleaded guilty to armed bank robbery, 18 U.S.C. § 2113(a), (d), and admitted details of the offense in a factual basis incorporated into his plea agreement. He admitted stealing $4,237 in currency and about $500 in coins. The factual basis discloses that $561 was recovered at the time of his brother's arrest, but nothing is said about the discarded bag of money turned over to police.

Before Anderson's initial sentencing, a probation officer forgot to include the $500 in stolen coins when calculating the amount of money taken during the robbery. In her presentence report, the probation officer said that the total amount stolen was $4,237 and that, after subtracting the $561 recovered from the brother, the restitution obligation was $3,676.

At the initial sentencing the prosecutor told the district judge that the parties had agreed that the probation officer mistakenly omitted from her restitution calculation the $500

in stolen coins. And although the prosecutor disclosed that police had recovered $561 and the bag containing $2,107 in currency, she said the discarded bills "were burned and stained" and "non-useable because the dye pack had gone off." For that reason, the prosecutor insisted, Anderson's restitution obligation should include the value of the discarded bills. The judge asked if defense counsel agreed with the prosecutor, and counsel said yes. The judge imposed 156 months' imprisonment and ordered Anderson to pay $4,131 in restitution (an amount that could not have been correct, even under the prosecutor's logic, because $4,237 plus $500 minus $561 equals $4,176, not $4,131).

Anderson filed a notice of appeal, but he did not complain about the calculation of restitution. Instead, after Anderson obtained new counsel, the parties filed a joint motion asserting that, because of problematic conditions of supervised release, we should remand for resentencing in light of *United States v. Thompson*, 777 F.3d 368 (7th Cir. 2015), and *United States v. Kappes*, 782 F.3d 828 (7th Cir. 2015). We granted that motion.

On remand the case was assigned to a different judge, and Anderson again changed lawyers. This third lawyer filed objections to the presentence report along with a sentencing memorandum, but counsel still said nothing about restitution. At resentencing counsel limited his objections to those he filed. The judge, however, was doubtful about the presentence report's restitution calculation and sought clarification: "I want to confirm that the parties agree that the restitution is $4,131. The robbers took $4,237 in cash and 500 in coins. 561 was recovered from [Anderson's brother]. This leaves 4131." The lawyers concurred (even though that equa-

tion equals $4,176). Throughout this exchange the prosecutor remained silent about the $2,107 in the government's possession. The judge sentenced Anderson to 126 months' imprisonment and again ordered him to pay $4,131 in restitution.

## II.

On appeal Anderson argues that the district court erroneously ordered him to pay as restitution the value of the $2,107 in the government's possession. That currency, says Anderson, should have been returned to the bank. The government defends the restitution order by contending that, first, Anderson waived this appellate claim and, second, he failed to prove that the recovered currency should "offset" the loss amount.

We start with the question of waiver. The government asserts that Anderson waived his restitution claim for two reasons: (1) he did not raise the claim at his original sentencing or in his first appeal and (2) he agreed to the restitution amount at resentencing. We disagree. As to the first of these contentions, the answer is straightforward: "A remand in light of *Thompson* vacates the entire sentence, allowing the district court to alter any aspect of that sentence at resentencing." *United States v. Lewis*, 842 F.3d 467, 473 (7th Cir. 2016); *see United States v. Mobley*, 833 F.3d 797, 801 (7th Cir. 2016) (explaining that, after a *Thompson* remand, "the defendant may assert any argument she wishes").

The government's second contention is stronger, but that argument cannot carry the day unless Anderson, by agreeing to the restitution figure proposed by the judge at resentencing, intentionally relinquished a known right. *See United States v. Butler*, 777 F.3d 382, 387 (7th Cir. 2015). Only if a de-

fendant chooses, "as a matter of strategy, not to present an argument" will that argument be deemed waived. *United States v. Garcia*, 580 F.3d 528, 541 (7th Cir. 2009); *see United States v. Burns*, 843 F.3d 679, 686–87 (7th Cir. 2016) (concluding that defendant who agreed to loss amount did not waive argument that he was responsible for less than full amount of restitution ordered); *Butler*, 777 F.3d at 387–88 (concluding that absence of objection to guidelines calculation was forfeiture, not waiver, because court could not conceive of strategic reason for not objecting); *United States v. Jaimes-Jaimes*, 406 F.3d 845, 848 (7th Cir. 2005) (concluding that defendant's acquiescence to upward adjustment under the sentencing guidelines had not waived appellate challenge to that increase because appellate court could not conceive of strategic reason for not objecting). Nothing in the record before us suggests that Anderson's new lawyer even knew about the robbery proceeds still in the government's possession. And the prosecutor stood by silently when the new judge asked the parties to confirm his restitution math.

What is more, it would not matter if Anderson's new lawyer did know about the $2,107, since the attorney's agreement with the court's loss calculation does not establish that counsel chose, on behalf of Anderson, to forgo objection as a matter of strategy. *See United States v. Allen*, 529 F.3d 390, 393–95 (7th Cir. 2008) (concluding that defendant did not waive objection to restitution amount, despite counsel's statement that defendant did not object, since defendant lacked strategic reason for abandoning challenge); *cf. United States v. Venturella*, 585 F.3d 1013, 1019 (7th Cir. 2009) (concluding that defendant waived argument by strategically withdrawing objection to obtain reduction for acceptance of responsibility). Anderson did not rely on the res-

titution calculation in any way, and saying nothing about the figure simply added thousands more to his restitution obligation. On this record, there is no reason to think that defense counsel intentionally decided against raising the claim presented in this appeal. And though he forfeited this claim, we will review a forfeited claim for plain error.

That brings us to the merits of Anderson's claim. The government says he seeks an "offset" and argues that Anderson was obligated to prove, but did not prove, that the restitution figure should be reduced by the amount of currency in its possession. Those bills, the government says, are "burned and dye stained" and possibly not replaceable by the Treasury Department. We conclude, however, that the government mischaracterizes what Anderson seeks and has misstated the burden of proof.

In a case involving stolen property, the restitution statute directs sentencing courts to order return of the property to the victim or, if return would be impossible, impracticable, or inadequate, to compel the defendant to pay the value of the property less the value of any property already returned. 18 U.S.C. § 3663A(b); *see Robers v. United States*, 134 S. Ct. 1854, 1857 (2014) (noting that, if the property damaged, lost, or destroyed was currency, then the property returned "need not be the very same bills"). Because the government bears the burden of establishing "the amount of the loss sustained by a victim," 18 U.S.C. § 3664(e), it falls on the *government* to prove that the victim will not be made whole by returning stolen property which has been recovered, *see United States v. Fonseca*, 790 F.3d 852, 855 (8th Cir. 2015). This is the rule governing the stolen currency in the government's possession.

Anderson is not seeking an "offset" as that word is understood in the restitution statute. A defendant is on the hook for stolen property that truly is unreturnable to the rightful owner. Sometimes when stolen property cannot be returned the defendant may seek to reduce his restitution obligation commensurately with the value of other property or services conveyed to the victim before sentencing. *See* 18 U.S.C. § 3663A(b)(1)(B)(ii); *Allen*, 529 F.3d at 397 (remanding for valuation of services that defendant had provided to victim of fraud scheme); *United States v. Shepard*, 269 F.3d 884, 887–88 (7th Cir. 2001) (remanding for valuation of improvements that defendant had made to victim's home). This is what courts mean by "offset" or "setoff," and when offset is the issue, the defendant bears the burden of proof because he knows best what he returned to the victim. *United States v. Malone*, 747 F.3d 481, 486 (7th Cir. 2014). Anderson is not saying he gave the bank a substitute asset; what he wants is for the government to give back to the bank the stolen currency held by the government.

According to Anderson, the government never proved that the stolen currency in its possession could not be returned to the bank. An example makes his point: Suppose while fleeing Anderson had dropped a bag of stolen currency that a bank employee immediately retrieved and returned to the vault. That currency would not be a "loss" to the bank for purposes of restitution. *See United States v. Newman*, 144 F.3d 531, 543 (7th Cir. 1998) (concluding that restitution figure was accurately based on government's uncontradicted representation that money strewn across bank floor was not included in loss amount). That the police, not a bank employee, recovered the $2,107 in this case is irrelevant. *See Fonseca*, 790 F.3d at 855 ("When a criminal proceeding is

completed, the government has a duty to return property in its custody to the rightful owner, unless it is subject to forfeiture."). We do not have a situation involving forfeiture or doubt about the ownership of property in the government's possession; the $2,107 always has belonged to the victim bank, and the government always has *known* that this money belongs to the bank. *Cf. United States v. Taylor*, 128 F.3d 1105, 1111 (7th Cir. 1997) (rejecting bank robbers' argument that amount of restitution should be reduced by value of cash recovered from robbers but never "proven to be part of the proceeds of the robbery").

The government contends that returning the $2,107 to the bank would be "inadequate" because, the government asserts, the bills are burned and stained. But in the district court the prosecutor never sought to prove this assertion, nor did she ever say why the appearance of the bills matters. At Anderson's initial sentencing the prosecutor first disclosed that $2,107 in currency had been recovered but then said the bills were "non-useable" because they were "burned and stained." There is nothing in the record suggesting that the bills in the government's possession are "non-usable," nor did the judge at either sentencing hearing make a finding on that question. Indeed, the evidence *undermines* the government's position: Just three months before Anderson's resentencing, the government had introduced those very bills during the trial of Anderson's brother (who was convicted of other charges but acquitted of bank robbery). And during that trial a Milwaukee police officer testified that he had counted $2,107 in bills; he described some as having dye stains but did not say that any were burned, let alone that the entire bag of money was "non-usable." Although the judge at Anderson's resentencing would have been free to

consider evidence from the brother's trial, *see United States v. Are*, 590 F.3d 499, 524 (7th Cir. 2009), the judge, who presided over both proceedings, apparently did not recall the officer's testimony about the $2,107 when calculating restitution.

The government suggests also that the $2,107 might be inadequate because, according to a commercial website cited by Anderson, the Treasury Department may not exchange bills damaged by explosion. This suggestion is absurd. Instead of a commercial website, we look to applicable federal law to understand the circumstances in which damaged currency may be exchanged for fresh bills. Federal regulations provide that currency "unfit for further circulation" because of its physical condition—e.g., "torn, dirty, limp, worn or defaced"—is redeemable at any commercial bank; only if a bill is so badly damaged that (1) one-half or less of the note remains or (2) doubt exists about the denomination will it be necessary to send that bill to the Treasury Department for discretionary replacement. *See* 31 C.F.R. §§ 100.5, 100.7; *Services: Redeem Mutilated Currency*, Dep't of Treas., http://www.moneyfactory.gov/services/currencyredemption. html (visited July 26, 2017). The government cannot claim ignorance about the condition of currency in its custody.

The government's fallback is that returning the $2,107 to the victim bank is "impracticable" because Anderson's brother has appealed, and, according to the government, the currency will be needed as evidence if he must be resentenced. This argument falls flat. The government conceded at oral argument that a defendant should not be ordered to pay in restitution the value of useable bills that the government has retained solely as evidence.

The Sixth Circuit has a single nonprecedential decision which favors the government's position, but we are not persuaded by that decision. In *United States v. Calhoun*, the defendant robbed a bank of $4,259. All of that currency had been recovered and returned to the bank before sentencing, but the defendant still was ordered to pay restitution in the same amount. 513 F. App'x. 514, 516 (6th Cir. 2013). On appeal the defendant argued for the first time that no amount of restitution was authorized because the bank's money had been returned. *Id.* at 518–19. The Sixth Circuit disagreed, reasoning that the currency given back to the bank had been burned when the dye pack exploded and, because the defendant had not raised the issue at sentencing, there was no way to know if the Treasury Department would replace the damaged bills. *Id.* at 519. This reasoning, we conclude, improperly flips the burden of proof from the government to the defendant; the defendant is not required to disprove the amount of loss *alleged* by the government.

At one time the Eighth Circuit followed an approach similar to that in *Calhoun,* but a more-recent Eighth Circuit decision requires the district court to exclude from the restitution obligation property that will be returned to the victim. In the earlier of these decisions, *United States v. McCracken*, the Eighth Circuit upheld a restitution order that disregarded the recovery of $850 from the defendant when he was arrested for bank robbery. 487 F.3d 1125, 1128–29 (8th Cir. 2007). The district court simply had trusted an assurance from government counsel that the seized money eventually would be returned to the victim bank and the restitution amount "adjusted" accordingly. *Id.* More recently, in *Fonseca*, a case involving stolen guns recovered and retained by authorities, the Eighth Circuit vacated a restitution order that included

the value of the recovered guns and remanded for a government accounting of the firearms, including an explanation of when they would be returned or why they would not be. 790 F.3d at 855. The court reasoned that the value of guns should not be included in the restitution obligation if they would be returned because that would provide double recovery to the victim. *Id.* The Eighth Circuit attempted to distinguish *McCracken* on the theory that, unlike cash, the value of guns changes over time and, because of this fluctuation, the district court had to determine the guns' value as of the date of sentencing and reduce the restitution amount accordingly. Despite the valuation distinction, in *McCracken* the court affirmed an order of restitution that included property seized by the government and slated for return to the victim, but in *Fonseca* eight years later the court said that such property is not counted as loss. The government does not rely on *Calhoun* or *McCracken*, and, in our view, *Fonseca* is the better-reasoned of these decisions from out of circuit.

We conclude that plain error resulted from the government's failure at resentencing to offer evidence that the $2,107 of stolen currency in its possession is inadequate for return to the victim bank. Had the prosecutor disclosed to the resentencing judge (who, quite understandably, may not have recalled all of the testimony from the trial of Anderson's brother) that the government still possessed the $2,107, the judge could have adhered to the restitution statute by hearing evidence and deciding if any of that amount was returnable to the bank, 18 U.S.C. § 3663A(b)(1)(B)(i), or if these bills are so badly damaged that they cannot be replaced. The government did not prove that the discarded proceeds are unreturnable; therefore, the order of restitution, by obligating Anderson to repay the value of those proceeds, errone-

ously exceeds the proven loss. That error is obvious under the law, even if not obvious to the judge at resentencing. *See Burns*, 843 F.3d at 687–88. And it harms both the defendant's substantial rights and the fairness, integrity, and public reputation of judicial proceedings when district courts order restitution that exceeds the proven loss. *Burns*, 843 F.3d at 689; *United States v. Yihao Pu*, 814 F.3d 818, 831 (7th Cir. 2016); *United States v. Kieffer*, 794 F.3d 850, 854 (7th Cir. 2015).

## III.

Because the record does not support the amount of loss reflected in the order of restitution, we VACATE the restitution award and REMAND for a hearing limited to determining the proper amount of restitution. The remainder of Anderson's sentence is left undisturbed.