In the

# United States Court of Appeals
## For the Seventh Circuit

No. 21-1874

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANTONIO EDWARDS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 18-CR-00045-1 — **Elaine E. Bucklo**, *Judge.*

ARGUED FEBRUARY 9, 2022 — DECIDED FEBRUARY 22, 2022

Before FLAUM, BRENNAN, and ST. EVE, *Circuit Judges.*

ST. EVE, *Circuit Judge.* Antonio Edwards and several ac-
complices robbed three cellphone stores in northeastern Illi-
nois. Each time, the team would enter around 5:30 p.m. wear-
ing hats and hooded sweatshirts, wait until all the customers
had left, announce a robbery, point a gun at an employee,
force the employee to assist them, stuff black garbage bags
with cellphones, and flee through the back door of the store.

A grand jury indicted Edwards on multiple counts of Hobbs Act robbery stemming from each of the three crimes and brandishing a firearm in connection with two of the robberies. Edwards pleaded guilty to robbing two stores but claimed not to be involved in the third robbery. The government sought to introduce evidence of the two admitted crimes to prove Edwards's identity through a common modus operandi in conducting each of the robberies. The district court admitted the evidence subject to a limiting instruction. A four-day trial ensued. After beginning deliberations, the jury sent a note asking if one of the witnesses identified Edwards. The district judge instructed the jury to "please rely on your collective memory of the testimony." The jury thereafter convicted Edwards on the remaining charges.

On appeal, Edwards contends that the district court erred by admitting evidence from the other two robberies and that the court should have provided the jury with a trial transcript in response to its question. We conclude that the district court did not abuse its discretion either by admitting the evidence or instructing the jury to rely on its collective memory. We therefore affirm.

## I. Background

### A. The Robberies

Antonio Edwards, along with several others, robbed three cellphone stores in northeastern Illinois: a T-Mobile store in Chicago, a Verizon store in Waukegan, and an AT&T store in Bradley.

The Chicago Robbery. On March 29, 2017, at 5:30 p.m., Edwards and an unknown accomplice entered a T-Mobile store in Chicago. They first went to the sales counter and asked

about cellphones and service plans. Shortly after, Andrew McHaney, another member of the group, came in and locked the front door. The unknown accomplice pulled a gun out, cocked it, and pointed it at the store clerk, one of two employees at the counter. The crew told the two clerks to go to the back room and open the safe. An employee did so, as McHaney worked to stuff cellphones into a black garbage bag. At the same time, Edwards led a clerk to the front of the store, where he removed the store register with gloved hands. The crew then tore some of the security equipment off the walls and attempted to put the clerks into the closet. While the two clerks tried to squeeze into the closet, the three robbers exited through the backdoor.

The Waukegan Robbery. On April 25, 2017, again at 5:30 p.m., Edwards walked into a Verizon store with a hat and hooded sweatshirt on. He spoke to one of the owners of the store, Jorge Acosta, while browsing around. After the last customer had left, Anthony Johnson and an unknown accomplice entered the store with hoods to cover their heads. Edwards told Johnson to lock the front door. He then pulled out a gun, cocked it, and pointed it at Jorge, who was working that day with two sales associates, Diego Acosta and Kayla McKenzie. Edwards ordered them all to the back of the store.

The crew made Jorge open the safe, which he did, before they forced him to his knees with the two employees. The unknown associate, wearing gloves, put all the cellphones into two black garbage bags with Johnson's help. After the crew was done, they demanded the store's security recordings, then fled through the back door into a getaway car.

The Bradley Robbery. On April 30, 2017, at the now familiar 5:30 p.m. time, Edwards and McHaney entered a AT&T

store, both wearing a hat and hood. McHaney forced the employee into the store's back room with a gun, as Edwards locked the front door. They demanded the employee's keys to the safe. Edwards grabbed the keys, opened the safe, and loaded the merchandise into two black garbage bags. The two men then took the employee's wallet and cellphone, removed the store's cash register, and fled through the store's back door.

**B. Indictment and Trial**

The grand jury indicted Edwards on conspiracy to obstruct, delay or affect commerce by robbery, 18 U.S.C. § 1951(a); Hobbs Act robbery for the Chicago T-Mobile, Bradley AT&T, and Waukegan Verizon stores, *id.*; and brandishing a firearm during the Bradley and Waukegan robberies, *id.* § 924(c)(1)(A). Edwards pleaded guilty to conspiracy and two of the Hobbs Act robberies—the Chicago robbery and the Bradley robbery. He maintained his innocence, nonetheless, on the three remaining charges—brandishing a firearm during the Bradley robbery, the Hobbs Act robbery for the Waukegan Verizon store, and brandishing a firearm during the Waukegan robbery.

After learning on the eve of trial that Edwards intended to plead guilty to the conspiracy charge, the government filed a motion in limine to introduce evidence of the Chicago and Bradley robberies to establish Edwards's modus operandi and identity as a participant in the Waukegan Robbery. The government noted that it further intended to introduce this evidence as direct evidence that Edwards brandished a weapon in connection to the Bradley robbery. Edwards objected to the modus operandi evidence under Federal Rule of Evidence 404(b), contending that the government's theory

relied on impermissible propensity reasoning. The district court admitted the evidence and gave the jury a limiting instruction regarding it.

The trial lasted four days. The government presented surveillance video from each robbery; testimony from James Bates, a cooperating defendant who drove the getaway car; testimony from FBI Special Agent Dustin Gourley about Edward's guilty plea for the Bradley robbery; eyewitness testimony from employees who identified Edwards at the Chicago T-Mobile store and Bradley AT&T store; testimony from the owner and employees of the Waukegan Verizon Store, including from Diego Acosta; testimony about the evidence recovered from the getaway car, including 70 cellphones and two LG watches in large black trash bags; call logs and contact lists from Bates's phone for the robberies, connecting him with Edwards and McHaney on the dates of the Waukegan and Bradley robberies; and cell-site information about Edwards's phone, which showed that he was in the area of all three robberies.

At the close of trial, the district court instructed the jury that "transcripts of trial testimony are not available to you. You must rely on your collective memory of the testimony." During deliberations, the jury sent a note asking if Diego identified Edwards at the Waukegan store. Edwards proposed sending a rough transcript of Diego's trial testimony, but the district court denied the request. Instead, the court instructed the jury to "please rely on your collective memory of the testimony." The jury found Edwards guilty of the remaining three charges, and the district court sentenced him to 224 months of imprisonment.

## II. Discussion

**A. Rule 404(b) Evidence**

Edwards first argues that the district court erred by admitting evidence of the Bradley and Chicago robberies to show identity through a modus operandi for committing the Waukegan robbery. We review Rule 404(b) decisions for abuse of discretion and defer to the district court's determination "unless no reasonable person could adopt its view." *United States v. Buncich*, 926 F.3d 361, 367 (7th Cir. 2019) (quoting *United States v. Norweathers*, 895 F.3d 485, 490 (7th Cir. 2018)).

As a preliminary matter, evidence of the Bradley robbery was admissible as direct evidence of the § 924(c)(1)(A) offense. Rule 404(b) simply "does not apply to direct evidence of the crime charged." *United States v. Bowling*, 952 F.3d 861, 869 (7th Cir. 2020) (quoting *United States v. Ferrell*, 816 F.3d 433, 443 (7th Cir. 2015)). Section 924(c)(1)(A) criminalizes the brandishing of a firearm during a crime of violence. The government had to prove that Edwards committed the underlying predicate offense—the Bradley robbery—to successfully convict him of brandishing a firearm during the offense. *United States v. Morrow*, 5 F.4th 808, 815 (7th Cir. 2021). The Bradley robbery evidence then directly related to the government's case and thus was admissible. *See United States v. Miller*, 959 F.2d 1535, 1538–39 (11th Cir. 1992) (en banc) (acknowledging that evidence could be admitted both as direct evidence and as evidence to mark "the handiwork of the accused"); *United States v. Boone*, 951 F.2d 1526, 1540 (9th Cir. 1991) (holding that the disputed evidence was both direct evidence and evidence of a modus operandi and determining that because "the jury was already evaluating evidence of similar acts, the district

[court] did not abuse its discretion in determining that the [evidence's] probative value outweighed its prejudicial effects").

Rule 404(b)(1) prohibits using evidence of other acts to show that a defendant had a propensity to commit a crime. *United States v. Morgan*, 929 F.3d 411, 427 (7th Cir. 2019) ("[A] court may not allow in evidence of prior acts to show that the defendant is 'the kind of person who would do such a thing.'"). Rule 404(b)(2) provides, however, that the evidence may be admitted "for another purpose, such as proving" identity or a modus operandi. *United States v. Brewer*, 915 F.3d 408, 415 (2019). *United States v. Gomez* sets out the relevant procedure. 763 F.3d 845 (7th Cir. 2014) (en banc); *see also United States v. Thomas*, 897 F.3d 807, 813 (7th Cir. 2018). Once a party objects to the admission of other-act evidence, the proponent must "first establish that the other act is relevant to a specific purpose other than the person's character or propensity to behave in a certain way." *Gomez*, 763 F.3d at 860. In other words, the non-propensity relevance must be shown "through a chain of reasoning that does not rely on the forbidden inference that the person has a certain character and acted in accordance with that character on the occasion charged." *Id.* Second, if the proponent successfully establishes that the evidence relates to a purpose other than impermissible propensity reasoning, the district court must evaluate under Rule 403 "whether the probative value of the other-act evidence is substantially outweighed by the risk of unfair prejudice." *Id.*

The government offered evidence from the Chicago and Bradley robberies for the non-propensity purpose of proving identity through a modus operandi common to all three robberies. Other-act evidence is admissible to show a modus

operandi when it establishes a unique pattern or signature
linking the other conduct to the alleged offense. *See, e.g.,*
*Brewer*, 915 F.3d at 415 (concluding that the government sup-
plied persuasive "propensity-free reasoning" because the
robbers lingered around banks entirely clothed and used a
specific stick and cash-demand note); *United States v. Price*,
516 F.3d 597, 603–04 (7th Cir. 2008) (noting that the robbers
used "specific techniques" by robbing the bank during the
early weekday, forcing the bank employees to disarm secu-
rity, using guns to muscle their way in, and targeting banks
in close geographic proximity); *United States v. Smith*, 103 F.3d
600, 603 (7th Cir. 1996) (determining that numerous common-
alities created a distinctive pattern based on the age, build,
and race of the robbers; that the robbers employed a driver;
the brandishing of knives; moving behind the bank counter to
directly demand the money; targeting smaller banks; and the
close proximity in time together); *see also* 2 Jack B. Weinstein
& Margaret A. Berger, *Weinstein's Federal Evidence* § 404.22
(Mark S. Brodin, ed., Matthew Bender 2d ed. 2022) ("Admis-
sion of other-crimes evidence on the 'signature' theory rests
on the belief that the acts of criminals fall into detailed pat-
terns that serve as 'prints' of their crimes.").

The three robberies shared sufficient commonalities to in-
dicate a modus operandi. All occurred around 5:30 p.m. in
northeastern Illinois during a two-month period. *See Smith*,
103 F.3d at 603 (one-month interval); *United States v. Stenger*,
605 F.3d 492, 499 (8th Cir. 2010) (two-month interval). Either
two or three people were seen robbing the store itself. Each
offender wore a hat, hood, or some combination to conceal his
identity, along with gloves and shirt sleeves to cover up fin-
gerprints. *See Brewer*, 915 F.3d at 415 (noting that the robbers
wore the same type of clothes for each act). One person spoke

with an employee before beginning the robbery. The crew ensured that all the customers had left the store before someone took out a gun to announce the robbery, cocked the weapon, and pointed it at an employee, while another locked the front door. They then led the employees to the back of the store, made someone open the safe, stuffed all the cellphones into black plastic garbage bags, attempted to cover up any evidence, sometimes by demanding the surveillance footage, and escaped through a back door toward their getaway car. *See Price*, 516 F.3d at 603 (crediting commonalities for each robbery when "the robber(s) forced the bank employee(s) at gunpoint to enter the bank, turn off the alarm, access the vault, and hit the ground before the robbers made their escapes").

While some of these characteristics may be generic to any robbery, together they establish a distinct signature for how Edwards and his team carried out these acts. *See United States v. Carlton*, 534 F.3d 97, 102 (2d Cir. 2008) ("While any of the similarities between the prior bank robberies and the charged crime—such as location, the takeover style of the robberies, or use of a getaway car—when viewed in isolation may not have established a *modus operandi*, taken together they establish the existence of a pattern."); *United States v. Mack*, 258 F.3d 548, 554 (6th Cir. 2001) ("[S]tandard conduct, although not particularly unusual by itself, may, in combination, present an unusual and distinctive pattern constituting a 'signature.'"). Nor do occasional dissimilarities undermine the collective commonalities. "Our cases … have considered modus operandi to mean a 'distinctive'—not identical—'method of operation.'" *Brewer*, 915 F.3d at 415–16 (quoting *United States v. Carson*, 870 F.3d 584, 599 (7th Cir. 2017)).

The district court also properly assessed under Rule 403 whether the probative value of the evidence was substantially outweighed by unfair prejudice. *Gomez*, 763 F.3d at 857. Edwards put his identity at issue during the trial, claiming to be involved only in the Bradley and Chicago robberies, not the Waukegan one. Thus, evidence showing that Edwards committed the Waukegan robbery was highly probative. *See Brewer*, 915 F.3d at 416 (holding that "other-act evidence was probative of [the defendant's] identity"; *United States v. Clark*, 774 F.3d 1108, 1116 (7th Cir. 2014) (holding that because the defendant "put his identity at issue … we do not find that the prejudicial value substantially outweighed the probative value of [the] evidence"). And Edwards was not unfairly prejudiced by its admission. The facts from each robbery closely resembled each other, reducing the risk that the evidence would be inflammatory. Further, as explained, the government introduced evidence from the Bradley robbery as direct evidence to convict Edwards under § 924(c)(1)(A).[1]

Moreover, the district court provided a limiting instruction that mitigated any potential unfair prejudice. It instructed the jury to consider the evidence from the Chicago and Bradley robberies only if those robberies were "specific enough that they [showed] a distinct method of operation that [identified] the defendant as a participant in the … charged robbery," and not for any other purpose. The jury could not "assume that because the defendant committed the [other robberies]" that he was "more likely to have committed the

---

[1] Edwards conceded at oral argument that "the Bradley evidence was coming in under any scenario because it was an element of the brandishing a firearm" and that it was "not improperly prejudicial to [Edwards]."

[Waukegan robbery] and other crimes charged in the indictment." *See* Committee on Federal Criminal Jury Instructions of the Seventh Circuit, *The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit* § 3.11 (2020 ed.). Limiting instructions are presumed "effective in reducing or eliminating unfair prejudice," and Edwards has not overcome this presumption. *United States v. Vargas*, 552 F.3d 550, 557 (7th Cir. 2008); *see also Brewer*, 915 F.3d at 416; *Gomez*, 763 F.3d at 860; *Smith*, 103 F.3d at 604. The jury instruction here, modeled on the pattern jury instruction, laid out the necessary non-propensity reason and advised the jury not to draw an impermissible bad-character inference. Therefore, we have little trouble concluding that the district court did not abuse its discretion by admitting evidence from the Chicago and Bradley robberies.

### B. Response to Jury Question

Next, Edwards asserts that the jury should have been provided a transcript in response to its question about Diego's testimony. We review a district court's response to a jury question for abuse of discretion. *United States v. Benabe*, 654 F.3d 753, 778 (7th Cir. 2011).

A district court has wide discretion in responding to a jury's question. *See, e.g.*, *United States v. Durham*, 645 F.3d 883, 893 (7th Cir. 2011); *United States v. Mealy*, 851 F.2d 890, 901–02 (7th Cir. 1988). Having presided over the trial, the district court is in the best position to respond to notes from the jury. Similarly, whether to provide a transcript of a witness's testimony is a decision "well within the trial court's discretion." *United States v. White*, 582 F.3d 787, 805 (7th Cir. 2009); *see also United States v. Howard*, 80 F.3d 1194, 1202 (7th Cir. 1996).

The jury asked a yes-or-no question: "During the trial, did Diego identify Antonio Edwards at the Waukegan Verizon store?" The judge responded, "In answer to your question, please rely on your collective memory of the testimony." The district court did not abuse its discretion instructing the jurors to rely on their collective memory of the testimony, *White*, 582 F.3d at 805; *Pattern Criminal Jury Instructions of the Seventh Circuit* § 7.01 (2020 ed.), and by denying Edwards's request to provide a transcript, *Howard*, 80 F.3d at 1202. Yes-or-no questions are challenging for a district court to answer because a one-word response "often fails to accurately recount the accompanying circumstances" and "give[s] an unfair advantage to the defendant by highlighting and focusing on the testimony of a single witness rather than the testimony of all the other witnesses to the event in question." *United States v. Adcox*, 19 F.3d 290, 294 (7th Cir. 1994). Telling the jurors to rely on their collective memory avoids the need to provide additional context and the risk of any unfair benefit. Furthermore, the trial lasted only four days. Diego's testimony should have been fresh in the jurors' minds. The jurors were permitted to take notes during the trial. *See United States v. Davis*, 93 F. App'x 924, 926 (7th Cir. 2004) (concluding that the district court did not abuse its discretion by refusing a jury's request for a transcript, in part, because of "the ability of jurors to take notes"). And only a "rough" unofficial transcript of the testimony was available rather than a finalized certified transcript; a rough transcript is not certified as accurate. The district court's response was well within its sound discretion.

### III. Conclusion

For these reasons, we affirm the conviction.