**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 18, 2022*
Decided March 21, 2022

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 21-2598

| | |
|---|---|
| UNITED STATES OF AMERICA | Appeal from the United States District |
| *Plaintiff-Appellee*, | Court for the Southern District of |
| | Illinois. |
| | |
| *v.* | No. 3:20-CR-30139-SMY-1 |
| | |
| GIOVANY F. GUZMAN, | Staci M. Yandle, |
| *Defendant-Appellant*. | *Judge*. |

**O R D E R**

A jury found Giovany Guzman guilty of possessing an alcoholic beverage in prison, for which he was sentenced to a further six months' imprisonment. 18 U.S.C. § 1791(a)(2), (c), (d)(1)(D). Guzman now contests the sufficiency of the evidence that

---

* We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, the parties waived oral argument, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

there was intoxicating ethanol or other alcohol in the bag of pungent fruit slop found in his locker. But a prison guard testified that Guzman admitted a search of his cell would uncover "hooch"; the guard then found the bag, whose contents smelled of alcohol; and other guards used a breathalyzer to test a puff of air from the bag and confirm the presence of alcohol. That evidence is sufficient, so we affirm.

## Background

At a three-day jury trial, the witnesses testified as follows. Guzman is a federal prisoner at FCI Greenville in Illinois. In summer 2020 his cellmate told officer Kendall Clavin that Guzman was hiding a knife in their cell. When Clavin and his supervisors started their search, they asked Guzman what they would find. Making no reference to any weapon, Guzman replied, "hooch"—which Clavin testified is slang for homemade alcohol.

When Clavin opened Guzman's locker within the cell, he indeed smelled alcohol and found a plastic bag containing a mush of fruits and liquid. Prior experience told Clavin that the bag contained homemade alcohol—the hooch Guzman had referred to. (Clavin also testified that he found a seven-inch long piece of sharp metal behind Guzman's locker. We say no more about the putative weapon outside his locker because the jury acquitted him of possessing weapons.)

Clavin gave the bag to officer Edward Bauer, who in turn took it to a supervisor who showed Bauer how to use a breathalyzer to confirm the presence of alcohol. Specifically, the officers opened the bag, put the breathalyzer's straw inside, and then squeezed the bag to force air through the straw. The breathalyzer gave a positive reading for alcohol. This squared with Bauer's observation (and Clavin's) that the bag's odor resembled that of homemade alcohol found at the prison on other occasions.

This use of a breathalyzer, according to Bauer's testimony, was unorthodox, and no witness offered details about the maintenance and calibration of the device. Indeed, breathalyzers are designed to test intoxicated humans, not intoxicating beverages. But at trial Guzman did not contest the admissibility of the breathalyzer result. Nor did he seek to suppress his statements to prison guards, present his own evidence, or request a jury instruction defining "alcoholic beverage" with greater specificity.

## Analysis

On appeal Guzman challenges the sufficiency of the evidence that the bag of mush contained alcohol. Our task is to decide whether a rational factfinder could have found the essential elements proven beyond a reasonable doubt, giving the government the benefit of all reasonable inferences from the evidence. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We view the record holistically, *see United States v. Morrow*, 5 F.4th 808, 816 (7th Cir. 2021), and will reverse only if "the record contains no evidence, regardless of how it is weighed, from which the [jury] could find guilt beyond a reasonable doubt," *United States v. Faulkner*, 885 F.3d 488, 492 (7th Cir. 2018) (internal quotation omitted).

Three mutually reinforcing pieces of evidence support the jury's determination that the bag contained alcohol. First, Guzman *told* correctional officers that they would find alcohol in his cell. Second, Clavin recovered from Guzman's locker a plastic bag containing a mushy liquid that smelled strongly of alcohol. Third, Bauer and his supervisor tested the bag using a breathalyzer, which indicated the presence of alcohol. But we need not opine on or otherwise consider the strength of the breathalyzer evidence, because the scent of alcohol and Guzman's confession to possessing hooch corroborate each other and suffice to support the conviction. *See United States v. Turner*, 709 F.3d 1187, 1195–96 (7th Cir. 2013) (evidence based on appearance of a substance, together with contextual clues, strongly probative that it contained narcotics); *accord Derosiers v. District of Columbia*, 19 A.3d 796, 800 (D.C. 2011) (officers' sensory experience sufficient to show beverage contained alcohol); *State v. Bohl*, 317 N.W.2d 790, 794–95 (N.D. 1982) (same); *cf. Reid v. District of Columbia*, 980 A.2d 1131, 1132 (D.C. 2009) (where defendant denies to officer that substance is alcohol, and absent any other evidence, breathalyzer test of liquid insufficient to prove it contained alcohol).

Still, Guzman now seeks to define alcohol as "ethanol" or an "intoxicating beverage" and questions whether the bag instead contained something else; perhaps he means it could have held a poisonous alcohol like methanol (a possible byproduct of distilling liquor). But he raises this argument for the first time on appeal. By first failing to propose a definition of alcohol at trial and then endorsing the final instructions, Guzman waived any challenge to the omission of an instruction defining alcohol. *See United States v. LeBeau*, 949 F.3d 334, 341–42 (7th Cir. 2020). In any event, even if we assumed that the liquid must include a non-zero amount of drinkable ethanol, the evidence here would suffice: the appearance and smell of the bag's contents, the lack of an alternative explanation for the mush or a reason to think toxic methanol was present,

and the testimony that Guzman admitted it was "hooch" would permit reasonable jurors to draw the common-sense inference that Guzman possessed ethanol for drinking. *See United States v. Johnson*, 916 F.3d 579, 586 (7th Cir. 2019) (juries should make common-sense inferences when considering circumstantial evidence).

Guzman posits that this view is too speculative under *United States v. Garcia*, in which we held that a government agent's interpretation of an elaborate system of codewords in intercepted phone calls, without more, was insufficient to prove that the defendant was guilty of distributing cocaine. 919 F.3d 489, 503–04 (7th Cir. 2019). For instance, in *Garcia* the government relied on officer testimony that "girl" meant "cocaine" and "work" meant "drug dealing" in the relevant drug markets, and from that starting point argued that Garcia's cryptic phone conversations hid—and proved— drug distribution. *Id.* at 494–95, 503–04.

Here, Guzman likens the prison guards' testimony to the agent's parsing of obscure drug-dealer codes in *Garcia*. But the government did not rely on that sort of decoding here. According to the testimony, Guzman admitted that officers would find hooch, a term more readily understood than the cryptic language in the *Garcia* calls. More importantly, here—unlike in *Garcia*—officers recovered the substance at issue. It was retrieved from Guzman's locker, smelled to two officers like alcohol, contained a fruity mush consistent with prison alcohol they had encountered before, and lacked any innocent explanation. That evidence corroborated Guzman's characterization of the mush as hooch; reciprocally, his characterization of it reinforced what the officers' noses and experience told them. *See United States v. O'Leary*, 957 F.3d 731, 733 (7th Cir. 2020) (corroborated confession sufficient to support conviction); *Turner*, 709 F.3d at 1195–96 (circumstantial evidence of crack cocaine, including lay testimony on substance's physical characteristics, strongly supported conviction); *cf. Reid v. United States*, 44 F.2d 51, 53 (7th Cir. 1930) ("[I]t is a generally well-known fact that alcohol … especially in the process of making, [has] a very penetrating odor."); *Derosiers*, 19 A.3d at 799–800 (police experience and sensory observation sufficient to prove beverage contained alcohol).

Even if there were other plausible interpretations of the evidence—and Guzman does not suggest an alternative explanation for what the recovered mush might have been—we will not reweigh it. And because the record demonstrates a sound basis for the jury's verdict, we will not set the judgment aside.

We therefore AFFIRM Guzman's conviction.